United States District Court
Southern District of Texas
**ENTERED**
June 25, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER JAMES LITTLE | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:17–CV–00328 |
| | § | |
| NANCY A. BERRYHILL, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Christopher James Little ("Little") seeks judicial review of an administrative decision denying him disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*

All dispositive pretrial motions in this case have been referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 6). Before the Court are the parties' competing Motions for Summary Judgment. (Dkts. 8, 10). Having considered the motions, responsive briefing, and applicable law, the Court RECOMMENDS that Little's Motion for Summary Judgment (Dkt. 8) be GRANTED, Defendant Nancy A. Berryhill's Motion for Summary Judgment (Dkt. 10) be DENIED, the decision of the Administrative Law Judge ("ALJ") be REVERSED and the case be REMANDED to the Commissioner of the Social Security Administration ("Commissioner") for an award of disability insurance benefits.

## I. BACKGROUND

Little filed a claim for social security disability benefits under Title II of the Act, alleging disability as of December 1, 2013. Little's application was initially denied, and denied again upon reconsideration. Subsequently, an ALJ held a hearing and found Little was not disabled. Little filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final. This appeal followed.

## II. APPLICABLE LAW

Section 405(g) of the Act governs the standard of review in disability cases. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance." *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987) (citation omitted). "Judicial review is to be deferential without being so obsequious as to be meaningless." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

A claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (citation and emphasis omitted). The administrative law judge must follow a five-step sequential analysis to determine whether a plaintiff is, in fact, disabled:

2

1. Is the claimant currently engaged in substantial gainful activity, i.e., working?  If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment?  If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1?  If so, the claimant is disabled.  If not, then the inquiry proceeds to question 4.

4. Can claimant still perform his past relevant work?  If so, the claimant is not disabled.  If not, then the agency must assess the claimant's residual functional capacity.

5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work claimant can do?  If so, claimant is not disabled.

*See* 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718.  Once the Commissioner shows that other jobs are available, the burden shifts back to the claimant to show he is unable to perform the alternative work.  *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision.  *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  *Post hoc* rationalizations for an agency decision are not to be considered by a reviewing court.  *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).  "The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision.  Conflicts in the evidence are for the Commissioner, not the courts, to resolve."  *Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-CV-230, 2017 WL 4351756, at *1

(S.D. Tex. Sept. 29, 2017) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

### III. THE ALJ'S DECISION

The ALJ found at step 1 that Little had not engaged in substantial gainful activity since December 1, 2013.

The ALJ found at step 2 that Little had the following severe impairments: degenerative disc disease, depression, and anxiety.  At step 3, the ALJ found that none of these impairments met or medically equaled any of the Social Security Administration's (the "Agency") listed impairments.

At step 4, the ALJ found that Little "is unable to perform any past relevant work [as a small business owner, a fencer, or auto detailer] because [such work] require[s] the performance of work related activities precluded by his residual functional capacity." (Dkt. 5-3 at 25).  Based on this determination, the ALJ assessed Little's residual functional capacity ("RFC"), concluding as follows:

> 5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).  He can lift and carry 20 pounds occasionally and 10 pounds frequently.  He could stand and walk for 6 of 8 hours each and sit 6 of 8 hours for a full 8-hour workday.  His ability to push, pull, and for gross and fine manipulation is unlimited.  He can climb stairs, but he cannot climb ladders, ropes, or scaffolds.  He cannot run.  He can send, stoop, crouch, crawl, balance, twist, and squat.  He can have occasional exposure to dangerous machinery.  He gets along with others.  He can understand simple instructions, concentrate and perform simple tasks, respond and adapt to workplace changes and supervision, but in an occasional public/employee contact setting.

(*Id.* at 17).

Lastly, at step 5, the ALJ considered Little's RFC, age, education, and work experience in conjunction with the Medical Vocational Guidelines to determine if there

was any other work he can do.  At the time of the ALJ's hearing, Little was 34 years old, with a high school education, and had previously worked as a small business owner, a fencer, and auto detailer.  Based on the relevant factors, the ALJ concluded "there are jobs that exist in significant numbers in the national economy that [Little] can perform." (Dkt. 5-3 at 25).  Accordingly, the ALJ determined that Little was not disabled under the Act and was not entitled to benefits.

## IV. DISCUSSION

In this appeal, Little asserts three arguments: (1) the ALJ failed to properly weigh the opinion of his treating, board-certified psychiatrist, Mohamed Ahmed, M.D. ("Dr. Ahmed"); (2) the ALJ failed to properly evaluate his subjective testimony; and (3) the ALJ posed a flawed hypothetical question to the Vocational Expert.

The Court first addresses Little's argument regarding Dr. Ahmed's medical opinion.  Because the Court finds this argument dispositive, the Court does not reach Little's remaining arguments.

## A.    DR. AHMED, LITTLE'S TREATING PSYCHIATRIST

Little contends that, when determining his RFC, the ALJ failed to properly evaluate the opinion of Dr. Ahmed.  Specifically, Little argues that the ALJ improperly discounted Dr. Ahmed's medical opinion, which should have been afforded controlling weight as opposed to little weight had the *Newton* factors been properly applied.  Little also contends that the ALJ's stated explanation for discounting Dr. Ahmed's medical opinion mischaracterizes the medical record and is otherwise unsupported by substantial evidence.

**Requirements for Giving Weight to Treating Physician:** The treating physician rule provides that the opinion of a claimant's treating physician is entitled to great weight. *See, e.g., Newton*, 209 F.3d at 455–56; *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Indeed, a treating physician's opinion regarding the severity and nature of a plaintiff's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175–76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)). But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" so long as good cause is shown. *Newton*, 209 F.3d at 455 (citation omitted). As stated clearly by the Fifth Circuit:

> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

*Id.* at 455–56 (alteration, citations, and internal quotation marks omitted).

**Factors to be Considered Before Declining to Give Treating Physician's Opinion Controlling Weight:** The Agency's regulations provide that the ALJ "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2) (effective

6

August 24, 2012 to March 26, 2017).  The regulations require the ALJ to consider six specific factors when assessing the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to controlling weight.  *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.").  Specifically, the ALJ must consider: (1) examining relationship; (2) treatment relationship; (3) supportability of the medical opinion; (4) consistency; (5) specialization of the physician; and (6) other factors.[1]  *See id. See also Newton*, 209 F.3d at 456 (stating the Fifth Circuit requires consideration of each of the 20 C.F.R. § 404.1527(c) factors).

In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456.  But, in subsequent decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009).  Therefore, where there is competing first-hand medical evidence (i.e., competing opinions of treating or examining physicians), and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another, the ALJ need not necessarily set forth an analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician.  *See id.* at 466–67.  "Stated differently, the detailed analysis under *Newton* is not necessary when the

---

[1] These factors are sometime referred to as the *Newton* factors.

ALJ has weighed the treating physician's opinion against opinions of other treating or examining physicians who have specific medical bases for a contrary opinion." *Nordin v. Comm'r, SSA*, No. 4:16-CV-00830-CAN, 2018 WL 1536897, at *4 (E.D. Tex. Mar. 28, 2018).

**Weight Given to Dr. Ahmed:** Dr. Ahmed treated Little from May 16, 2014, through at least the date of the ALJ's decision, and his diagnoses included "anxiety and mood disorder."[2]  (Dkt. 5-3 at 18).  During his treatment of Little, Dr. Ahmed twice completed a Mental Impairment Questionnaire ("MIQ") (Dkt. Nos. 5-18 at 50–54, 5-14 at 10–13).

Dr. Ahmed completed the first MIQ on November 12, 2014.  (Dkt. 5-14 at 10–13).  In the first MIQ, Dr. Ahmed notes that although he began treating Little in May 2014, "[i]n [his] best medical opinion … [Little's] symptoms and related limitations as detailed in the questionnaire apply as far back as: [December 1, 2013]." (*Id.* at 13).  Dr. Ahmed also indicates that he expects Little's symptoms to last at least 12 months and Little could be expected to miss work more than three times a month.  (*Id.* at 10, 13).  Based on his experience treating and examining Little, Dr. Ahmed made the following findings regarding Little's "*ability to perform the below mental activities* in a competitive environment on a sustained and ongoing basis (8 hours per day, 5 days per week)":

---

[2] As mentioned above, the ALJ found at step 2 of the required sequential analysis (20 C.F.R. § 404.1520) that depression and anxiety are among Little's severe impairments.

**Please indicate only those limitations that exist in the absence of drug or alcohol abuse.**

Degrees of Limitation:

| | |
|---|---|
| **None** | Symptoms do not interfere with ability |
| **Mild** | Symptoms rarely interfere with ability |
| **Moderate** | Symptoms occasionally interfere with ability (Occasional - up to 1/3 of an 8-hr workday) |
| **Moderate-to-marked** | Symptoms frequently interfere with ability (Frequent - 1/3 - 2/3 of an 8-hr workday) |
| **Marked** | Symptoms constantly interfere with ability (Constant - more than 2/3 of an 8-hr workday) |

| Mental | Degree of Limitation | | | | |
|---|---|---|---|---|---|
| | None-to-mild | Moderate | Moderate-to-marked | Marked | Unknown |
| **Understanding and Memory** | | | | | |
| • Remember locations and work-like procedures | | | | ✓ | |
| • Understand and remember one-to-two step instructions | | | ✓ | | |
| • Understand and remember detailed instructions | | | | ✓ | |
| **Concentration and Persistence** | | | | | |
| • Carry out simple, one-to-two step instructions | | | ✓ | | |
| • Carry out detailed instructions | | | | ✓ | |
| • Maintain attention and concentration for extended periods | | | | ✓ | |
| • Perform activities within a schedule and consistently be punctual | | | | ✓ | |
| • Sustain ordinary routine without supervision | | | | ✓ | |
| • Work in coordination with or near others without being distracted by them | | | | ✓ | |
| • Make simple work-related decisions | | | ✓ | | |
| • Complete a workday without interruptions from psychological symptoms | | | | ✓ | |
| • Perform at a consistent pace without rest periods of unreasonable length or frequency | | | | ✓ | |
| **Social Interactions** | | | | | |
| • Interact appropriately with the public | | | | ✓ | |
| • Ask simple questions or request assistance | | | ✓ | | |
| • Accept instructions and respond appropriately to criticism from supervisors | | | | ✓ | |
| • Get along with coworkers or peers without distracting them | | | | ✓ | |
| • Maintain socially appropriate behavior | | | | ✓ | |
| • Adhere to basic standards of neatness | | | | ✓ | |
| **Adaptation** | | | | | |
| • Respond appropriately to workplace changes | | | | ✓ | |
| • Be aware of hazards and take appropriate precautions | | | | ✓ | |
| • Travel to unfamiliar places or use public transportation | | | | ✓ | |
| • Set realistic goals | | | | ✓ | |
| • Make plans independently | | | | ✓ | |

(*Id.* at 12).  Dr. Ahmed found Little would experience marked limitations in 19 categories and moderate-to-marked limitations in the remaining four categories.

Dr. Ahmed completed a second MIQ nearly two years after the first, on August 11, 2016.  (Dkt. 5-18 at 50–54).  In the second MIQ, Dr. Ahmed provides an assessment of Little's condition and outlook, along with more detailed notes describing the basis for certain of his assertions—overall, his opinion is substantially similar to what he offered in

the first MIQ. Dr. Ahmed again asserts that although he began treating Little in May 2014, "[i]n [his] best medical opinion … [Little's] symptoms and related limitations as detailed in the questionnaire apply as far back as: [December 1, 2013]." (*Id.* at 54). However, this time he specifically writes that in proffering the December 2013 date, he reviewed Little's medical records dating back to June 2012, in addition to his own treatment records. (*Id.* at 54). Dr. Ahmed again indicates that he expects Little's symptoms to last at least 12 months, and Little could be expected to miss work more than three times a month. (*Id.* at 50, 54). Based on his experience treating and examining Little, Dr. Ahmed made express findings regarding Little's "*ability to perform [certain] mental activities* in a competitive environment on a sustained and ongoing basis (8 hours per day, 5 days per week)." (*Id.* at 53). Dr. Ahmed found Little would experience marked limitations in 12 categories, moderate-to-marked limitations in five categories, moderate limitations in four categories, and none-to-mild limitations in the remaining two categories. Specifically, Dr. Ahmed provided as follows:

**Please indicate only those limitations that exist in the absence of drug or alcohol abuse.**

Degrees of Limitation:
- **None** ............... Symptoms do not interfere with ability
- **Mild** ............... Symptoms rarely interfere with ability
- **Moderate** ............... Symptoms occasionally interfere with ability (Occasional - up to 1/3 of an 8-hr. workday)
- **Moderate-to-marked** ...Symptoms frequently interfere with ability (Frequent - 1/3 - 2/3 of an 8-hr. workday)
- **Marked** ............... Symptoms consistently interfere with ability (Constant - more than 2/3 of an 8 hr. workday)

| Mental | None-to-mild | Moderate | Moderate-to-marked | Marked | Unknown |
|---|---|---|---|---|---|
| **Understanding and Memory** | | | | | |
| • Remember locations and work-like procedures | ☑ | ☐ | ☐ | ☐ | ☐ |
| • Understand and remember one-to-two step instructions | ☑ | ☑ | ☐ | ☐ | ☐ |
| • Understand and remember detailed instructions | ☐ | ☐ | ☐ | ☑ | ☐ |
| **Concentration and Persistence** | | | | | |
| • Carry out simple, one-to-two step instructions | ☐ | ☑ | ☐ | ☑ | ☐ |
| • Carry out detailed instructions | ☐ | ☐ | ☐ | ☑ | ☐ |
| • Maintain attention and concentration for extended periods | ☐ | ☐ | ☐ | ☑ | ☐ |
| • Perform activities within a schedule and consistently be punctual | ☐ | ☐ | ☐ | ☑ | ☐ |
| • Sustain ordinary routine without supervision | ☐ | ☐ | ☐ | ☑ | ☐ |
| • Work in coordination with or near others without being distracted by them | ☐ | ☐ | ☐ | ☑ | ☐ |
| • Make simple work-related decisions | ☐ | ☐ | ☑ | ☐ | ☐ |
| • Complete a workday without interruptions from psychological symptoms | ☐ | ☐ | ☐ | ☑ | ☐ |
| • Perform at a consistent pace without rest periods of unreasonable length or frequency | ☐ | ☐ | ☑ | ☐ | ☐ |
| **Social Interactions** | | | | | |
| • Interact appropriately with the public | ☐ | ☐ | ☐ | ☑ | ☐ |
| • Ask simple questions or request assistance | ☐ | ☐ | ☑ | ☐ | ☐ |
| • Accept instructions and respond appropriately to criticism from supervisors | ☐ | ☐ | ☑ | ☐ | ☐ |
| • Get along with coworkers or peers without distracting them | ☐ | ☐ | ☐ | ☑ | ☐ |
| • Maintain socially appropriate behavior | ☐ | ☐ | ☑ | ☐ | ☐ |
| • Adhere to basic standards of neatness | ☑ | ☐ | ☐ | ☐ | ☐ |
| **Adaptation** | | | | | |
| • Respond appropriately to workplace changes | ☐ | ☐ | ☐ | ☑ | ☐ |
| • Be aware of hazards and take appropriate precautions | ☐ | ☑ | ☐ | ☐ | ☐ |
| • Travel to unfamiliar places or use public transportation | ☐ | ☐ | ☐ | ☑ | ☐ |
| • Set realistic goals | ☐ | ☑ | ☐ | ☑ | ☐ |
| • Make plans independently | ☐ | ☑ | ☐ | ☐ | ☐ |

(*Id.*).

Despite Dr. Ahmed's clear status as Little's treating specialist, with several years of treatment history, the ALJ assigned "little weight" to Dr. Ahmed's opinions regarding Little's ability to perform certain mental activities in a competitive environment on a sustained and ongoing basis. (Dkt. 5-3 at 24).

**ALJ's Reasons for Assigning Dr. Ahmed's Opinions Little Weight:** In assigning Dr. Ahmed's opinions little weight, the ALJ offers this threadbare explanation:

> I afford little weight to these opinions as they are not supported by Dr. Ahmed's own progress reports that show significant activities of daily living, good energy levels, and a returning interest to pursue work activity. (Exhibits 5F, 8F, 9F 11F, 14F). In addition, in his first opinion at Exhibit 1F pages 9 through 12, Dr. Ahmed indicated the claimant's symptoms began five months before the claimant began treatment with Dr. Ahmed. Such discrepancy suggests Dr. Ahmed relied upon the claimant's subjective statements in completing this mental residual functional capacity as opposed to the objective findings upon examination.

(*Id.*).  Notably, in discounting Dr. Ahmed's opinions, the ALJ does not identify, cite, or otherwise demonstrate his reliance on any specific controverting or competing medical opinions, treatment notes, or clinical observations from another treating or examining physician.[3]  The explanations offered by the ALJ amount to one conclusory statement and one factually inaccurate description of the record.  The Court addresses each in turn.

---

[3] Based on this Court's review of the record, Dr. Ahmed is the only treating physician that specifically offered an opinion regarding Little's ability to perform certain mental activities in a competitive environment on a sustained and ongoing basis.  After assigning Dr. Ahmed's opinion little weight, the only specific medical opinions discussed by the ALJ were the opinions of two non-examining State Agency physicians. (Dkt. 5-3 at 24).  The ALJ does not attempt to directly juxtapose or otherwise compare the findings of the non-examining physicians with those of Dr. Ahmed.  Nonetheless, the Court recognizes that Dr. Ahmed's described Little's mental limitations as being significantly more restrictive than the mental limitations found by the non-examining State Agency physicians.  In other words, the non-examining State Agency physicians seem to have offered medical conclusions that are contradicted or unsupported by Dr. Ahmed, the only treating physician.  This is not surprising because it does not appear that either of the State Agency physician reviewed Dr. Ahmed's MIQs.  In the Fifth Circuit, an "ALJ may rely on a non-examining physician's assessments **so long as** the report of the non-examining physician is not the sole medical evidence presented **and as long as the non-examining physician does not draw specific medical conclusions that either contradict or are unsupported by findings made by an examining physician.**" *Hill v. Berryhill*, No. 17-60007, 2018 WL 775290, at *3 (5th Cir. Feb. 7, 2018) (citation and internal quotation marks omitted) (emphasis added).  Thus, even if the ALJ intended to solely rely upon the opinions of the non-examining State Agency physicians as the basis for assigning little weight to Dr. Ahmed's opinion, he could not do so here.  *See Smith v. Colvin*, No. 1:14CV195-SA-DAS, 2016 WL 762693, at *14 (N.D. Miss. Feb. 25, 2016) ("as a matter of law, the opinions of the non-examining physicians, though referenced by the ALJ, cannot rise to the level of substantial evidence to support the limited weight given to [a treating physician's] opinions") (citation omitted).

**Reason 1: Dr. Ahmed's Progress Reports Controvert or Conflict with his MIQs.** In support of his conclusory statement that Dr. Ahmed's MIQs are "not supported by [his] own progress reports," the ALJ cites to five different exhibits that together total approximately 172 pages. (Dkt. 5-3 at 24). The ALJ makes no attempt to specifically identify any particular page within the 172 pages of progress reports as containing details controverting the mental limitations expressed in Dr. Ahmed's MIQs. The ALJ's asserted reason is substantially similar to instances where other ALJ's have simply stated that a physician's medical opinion is "not supported by the medical record." In similar cases, courts have found that "[s]tating that the opinions are 'not supported by the medical record' provides no insight into the ALJ's reasoning and provides no basis for appellate review." *Smith*, 2016 WL 762693, at *9. On this basis alone, the ALJ's first proffered reason is insufficient to support his rejection of Dr. Ahmed's medical opinion.

Although the ALJ fails to specifically identify any purported conflicts between Dr. Ahmed's progress reports and MIQs, the Commissioner offers several examples in her filing.[4] For example, the Commissioner offers instances were Dr. Ahmed's progress reports state that "Plaintiff reported"[5] the following: "[his] mood was more stable"; "his

---

[4] As a matter of law, these *post hoc* rationalizations cannot provide a sufficient basis to uphold the ALJ's decision. *See Newton*, 209 F.3d at 455; *Chenery*, 332 U.S. at 196. The Court discusses them here only to illustrate the flaw in the Agency's reasoning.

[5] It is worth mentioning that Dr. Ahmed's progress reports, as a general proposition, memorialize how Little describes the current status of his impairment and treatment. In this regard, the Commissioner correctly asserts that "Little reported" many of the qualitative statements discussed above. Importantly, in declaring that Dr. Ahmed's progress reports do not support his MIQs, the ALJ does not acknowledge this fact. Instead, the ALJ seems to conflate the memorialization of Little's stated opinions about his impairment with the objective findings Dr. Ahmed clearly expressed in the MIQs. This is risky business in light of the fact that Little

13

mood and anxiety were stable, though he had some sleep disturbances"; "his mood was stable, his energy and motivation were good, and he was pleased with his medication"; "his anxiety was somewhat better than before"; "he was doing well with his current treatment plan"; "his anxiety was moderate but well-controlled ... and his mood disorder was good and stable"; he restarted "having mood swings and anxiety"; and a new medication resulted in "better control of mood and symptoms and anxiety symptoms." (Dkt. 10-1 at 6-7). These are only a few of the examples specifically offered by the Commissioner; the other examples, which are not detailed here, are substantially similar. *See* (*id.* at 8).

The Court finds these examples particularly weak. Contrary to the assertion of the ALJ and the Commissioner, the progress reports do not actually controvert or conflict with the mental limitations detailed in the MIQs. Dr. Ahmed's progress reports contain only qualitative descriptions of Little's activities of daily living and energy levels, while the MIQs contain specific, quantitative mental limitations describing Little's ability to perform certain mental activities in a competitive environment on a sustained and ongoing basis. "Medical notes that do not give an opinion on [a] Plaintiff's ... limitations

---

readily testified to the ALJ that he frequently has an incorrect estimation of his own condition, and he relies heavily on third parties to discern the truth. *See* (Dkt. 5-3 at 77) ("I always try to take my wife to the psychiatrist, to the therapist, because she has a bird's eye view of what's really happening. I can sit here and tell you I think I'm doing good ... all day, and then her opinion could be totally different."). The fact that this subtle factual distinction presents a more than plausible explanation for any perceived inconsistency between Dr. Ahmed's progress reports and MIQs should have prompted the ALJ to seek additional clarification from Dr. Ahmed before discrediting his opinion. *See* 20 C.F.R. § 404.1520b(c) (explaining that the ALJ can resolve inconsistency or insufficiency in the record by seeking clarification from a medical source).

in the workplace or what activities [he] would be able to perform do not controvert the opinion of [the] Plaintiff's treating physician." *Thomas v. Berryhill*, No. 3:16-CV-3453-BT, 2018 WL 1517861, at *5 (N.D. Tex. Mar. 26, 2018) (quotation marks and alterations omitted) (collecting cases). Furthermore, it is unclear how Little's "interest to pursue work activities" undermines Dr. Ahmed's mental limitations assessment. (Dkt. 5-3 at 24). This is especially true here, where Dr. Ahmed's progress reports clearly indicate that Little attempted to return to work, but had to abandon the attempt due to his mental impairments. *See, e.g., Smith*, 2016 WL 762693, at *14 ("A work attempt of unknown duration and scope is not substantial evidence to support rejecting [Little's] opinions" because "[a]ny inference drawn from such a crumb of information is necessarily speculative."). Thus, even if the ALJ had detailed the *post hoc* rationalizations offered by the Commissioner, the ALJ would have failed to demonstrate that Dr. Ahmed's progress reports conflict with the MIQs.

**Reason 2: Dr. Ahmed's First MIQ Indicates Little's Symptoms "Began Five Months Before" Little Began Seeing Dr. Ahmed.** This reason is factually inaccurate, unsupported by the medical record, and amounts to cherry picking. In the first MIQ, Dr. Ahmed does not assert that Little's "symptoms began five months before" (Dkt. 5-3 at 24); rather, Dr. Ahmed simply indicates that "**[i]n [his] best medical opinion** … **[Little's] symptoms and related limitations as detailed in the questionnaire apply as far back as**: [December 1, 2013]." (Dkt. 5-14 at 13) (emphasis added). This distinction renders toothless the ALJ's further assertion that "[s]uch discrepancy suggests Dr. Ahmed relied upon [Little's] subjective statements in completing [the questionnaire] as

opposed to the objective findings upon examination." (Dkt. 5-3 at 24). This is so because Dr. Ahmed never asserts that Little's symptoms **began** on a date certain; indeed, he expressly states that the date he provides is based on his "best medical opinion." This can hardly be described as a discrepancy. Moreover, it is extremely curious that the ALJ only references the first MIQ in asserting that this single "discrepancy" justified his discounting Dr. Ahmed's medical opinion. As mentioned above, the record contains a second MIQ, in which Dr. Ahmed clearly writes that in proffering the December 2013 date, he reviewed Little's medical records dating back to June 2012, in addition to his own treatment records. (Dkt. 5-18 at 54). The ALJ's selective use of the first MIQ—seemingly because Dr. Ahmed did not bother to mention that he had reviewed earlier dated medical records—is inexcusable considering that the second MIQ specifically states the Dr. Ahmed reviewed other medical records and the record before the ALJ is filled with other medical evidence supporting Dr. Ahmed's "best medical opinion." For example, the record before the ALJ includes several medical records documenting that Little was diagnosed with bipolar disorder and was already on medications, including anti-depressants, prior to his treatment by Dr. Ahmed. *See, e.g.*, (Dkt. 5-8 at 56). Thus, the ALJ's second stated reason for not giving Dr. Ahmed's opinion controlling weight is unpersuasive and controverted by the medical record.

To recap, the ALJ has not pointed to any medical evidence or to any other substantial evidence in the record to justify his rejection of the treating specialist's opinion. Thus, the ALJ's reasons for rejecting the opinion of Dr. Ahmed do not constitute good cause.

16

**The § 404.1527(c) Factors (*Newton* Factors) Analysis**:  In the absence of good cause, an ALJ is required to consider the § 404.1527(c) factors before declining to give controlling weight to a treating specialist's medical opinion.  *See Newton*, 209 F.3d at 456 ("an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist").   The Commissioner does not argue that the ALJ properly conducted the required analysis under § 404.1527(c).   Instead, the Commissioner argues that the ALJ did not have to conduct an analysis under the § 404.1527(c) factors because he relied upon Dr. Ahmed's own progress reports, which constitute "'competing first-hand medical evidence' that supports the ALJ's decision."  (Dkt. 10-1 at 8) (quoting *Newton*, 209 F.3d at 458).   This argument lacks merit and has been squarely and repeatedly rejected.  *See Palmer v. Berryhill*, No. 3:16-CV-2197-BF, 2017 WL 2079808, at *5 (N.D. Tex. May 15, 2017) ("The Commissioner's argument that Dr. Hariz's own treatment notes constitute competing first-hand evidence also lacks merit.") (collecting cases); *Thomas*, 2018 WL 1517861, at *4 ("a physician's own records do not constitute competing first hand medical evidence") (citation omitted).   Therefore, under the facts of this case, the ALJ was required to provide a detailed analysis of the six factors.

Although the ALJ's decision contains boilerplate citation to § 404.1527(c), it does not clearly indicate that the ALJ fully performed the requisite six-factor analysis.  To be sure, the ALJ details—in narrative form—portions of Dr. Ahmed's various progress reports between 2014 and 2016, and even mentions certain facts that might fall under the § 404.1527(c) factors, such as Dr. Ahmed being Little's psychiatrist.  However, nothing

about the ALJ's discussion indicates that he took seriously his obligation to fully consider each of the § 404.1527(c) factors.  This Court is not inclined to scour through the ALJ's decision to try and cobble together a cogent six factor analysis, where such is not clear on the face of the ALJ's decision—particularly where the lone treating specialist's medical opinion has been given little weight.  To do so, in this case—at best—would necessarily require the Court to partially substitute its judgment for the Commissioner's; and—at worst—would require the Court to manufacture what can only be described as a *post hoc* rationalization.[6]  The Court declines to risk either, as both alternatives are prohibited. The Court finds, therefore, that the ALJ failed to conduct the required analysis under § 404.1527(c).

**The Commissioner's Other Arguments:**  The Commissioner also seems to argue that other substantial evidence supports the ALJ's decision.  Specifically, the Commissioner first argues that in one instance noted in Dr. Ahmed's progress reports, Little admitted that "he had not been taking his medications as planned" during his last office visit, which occurred approximately two weeks earlier.  (Dkt 10-1 at 8).  The Commissioner suggests this is substantial evidence supporting the ALJ's decision because Little "fail[ed] to follow treatment."  (*Id.*) (citing *Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1990)).  The Commissioner is mistaken.  The regulation cited by the *Johnson* court in describing the effect of a disability claimant failing to follow a prescribed treatment is limited to instances when the prescribed "treatment is expected to restore your ability to work."  20 C.F.R. § 404.1530(a).  The record contains no evidence

---

[6] Even the Commissioner did not bother to offer such a demanding *post hoc* rationalization.

that such an expectation exists in this case.  Indeed, in both MIQs, Dr. Ahmed indicates that he expects Little's mental limitations to last at least a year into the future.

Next, the Commissioner argues that Little's activities of daily living support the ALJ's decision.  The Commissioner is correct that it is appropriate for the ALJ to consider Little's activities of daily living, but as the Fifth Circuit has explained, "they should not be dispositive."  *Stanridge-Salazar v. Massanari*, 254 F.3d 70, 2001 WL 502506, at *2 (5th Cir. Apr. 24, 2001).  The danger of utilizing a recitation of a claimant's daily activities alone to disregard a treating specialist's professional judgment, particularly a claimant suffering mental limitations, has been succinctly described by Judge Richard A. Posner:

> For example, the judge noted that the plaintiff dresses appropriately, shops for food, prepares meals and performs other household chores, is an "active participator [*sic*] in group therapy," is "independent in her personal hygiene," and takes care of her 13–year–old son.  This is just to say that the plaintiff is not a raving maniac who needs to be locked up.  She is heavily medicated, and this enables her to cope with the challenges of daily living, and would doubtless enable her to work on some days.  But the administrative law judge disregarded uncontradicted evidence that the plaintiff's son cooks most meals, washes the dishes, does the laundry, and helps with the grocery shopping.  And Caspary and Chucka, having treated the plaintiff continuously for three years, have concluded that she cannot hold down a full-time job.

*Bauer v. Astrue*, 532 F.3d 606, 608–09 (7th Cir. 2008).  The scenario described in *Bauer* is substantially similar to the record before this Court.  Little explained that he does try to carry out certain daily activities, but also noted that his ability to do so is impacted by his mental impairments and he relied on others to assist him when his mental impairments became overwhelming.  Dr. Ahmed was aware of this, had treated Little for several years,

and still assessed the mental limitations found in the MIQs.  In light of this record, Little's daily activities do not constitute substantial evidence sufficient to reject Dr. Ahmed's opinion.

Accordingly, the ALJ did not apply the correct legal standard, and his decision is not supported by substantial evidence.

## B.    THE ALJ'S ERRORS WERE NOT HARMLESS

Although the ALJ erred by improperly evaluating Dr. Ahmed's opinions, the Court must still consider whether the errors were harmless.  "In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *27 (N.D. Tex. Mar. 28, 2013) (citations omitted).

As described above, in the second MIQ, Dr. Ahmed found that the following mental limitations, among many others, would constantly (more than 2/3 of an 8 hour work day) interfere with Little's ability to perform in a competitive environment on a sustained and ongoing basis: maintain attention and concentration for extended periods of time; interact appropriately with the public; and get along with coworkers or peers without distracting them.  (Dkt. 5-18 at 53).  The vocational expert testified that Little's age, education, and past relevant work, coupled with the mental limitations described by Dr. Ahmed "would" preclude all competitive employment.[7]  *See* (Dkt. 5-3 at 86–87).

---

[7] The hypothetical question that the ALJ posed to the vocational expert did not fully incorporate Dr. Ahmed's medical opinion.  As detailed throughout this opinion, the ALJ's decision to reject the opinion of Dr. Ahmed was improper.  Thus, this brief discussion of the vocational expert's testimony is not the same as Little's argument that the ALJ posed a flawed hypothetical by

The vocational expert also testified that if the same individual were absent more than three times a month due to those same mental impairments, such absences would "also preclude competitive employment." (*Id.* at 87). In light of this testimony, the Court finds that the errors described above are material to the ALJ's ultimate finding of no disability. If the ALJ had properly considered Dr. Ahmed's opinions—i.e., giving them controlling weight—he might have imposed greater restrictions on Little's RFC. And had the ALJ tracked this more restricted RFC to the vocational expert, a different conclusion might have been reached regarding Little's disability status. Because it is conceivable that the ALJ would have reached a different disability determination had he properly considered Dr. Ahmed's opinions, his error was not harmless.

## C.   THE APPROPRIATE REMEDY

The remaining issue is whether the case should be remanded to the Commissioner or reversed with a direction to calculate and award benefits to Little. District courts have the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This provision gives the courts "wide discretion" to remand a case for further proceedings or dispose of the case without remand. *See Davis v. Colvin*, 603 F. App'x 257, 258 (5th Cir. 2015); *Bordelon v. Barnhart*, 161 F. App'x 348, 353 n.12 (5th Cir. 2005). "Every Court of Appeals has recognized the freedom of [district] courts to reverse and remand a

---

"fail[ing] to accurately describe **all of the mental limitations recognized for Mr. Little in the ALJ's decision**." (Dkt. 9 at 28) (emphasis added).

decision of the Commissioner with instructions to immediately calculate and award benefits." *Monariti v. Berryhill*, No. 4:16-CV-626, 2017 WL 4100030, at *15 (S.D. Tex. Sept. 15, 2017) (collecting cases).

Here, reversal of the ALJ's decision and an immediate award of benefits is warranted. The record in this case has been fully developed. Little has a long-standing treatment relationship with Dr. Ahmed, his psychiatrist. Dr. Ahmed is the only treating specialist who has offered an opinion regarding Little's ability to perform certain mental activities in a competitive environment on a sustained and ongoing basis. The mental limitations Dr. Ahmed describes are greater than the limitations found by the two non-examining State Agency physicians. There is no other substantial evidence in the record contradicting the mental limitations assessed by Dr. Ahmed. And the reasons offered by the ALJ for rejecting the mental limitations assessed by Dr. Ahmed are conclusory, factually incorrect,[8] and unsupported by substantial evidence. Given all of these facts, the ALJ seems to have divined his own assessment of Little's mental limitations by translating Dr. Ahmed's progress reports into mental limitations in order to reject the mental limitations expressly found by Dr. Ahmed. In other words, the ALJ "played doctor," which he is emphatically unqualified to do. *See Franco v. Colvin*, No. CV H-15-2443, 2016 WL 7736851, at *17 (S.D. Tex. Aug. 12, 2016), *report and recommendation adopted*, No. CV H-15-2443, 2016 WL 4565669 (S.D. Tex. Sept. 1, 2016) ("the ALJ is

---

[8] This Court cannot ignore an ALJ's incorrect statements when offered to explain important decisions, such as the decision to assign little weight to the opinion of a claimant's longstanding treating physician. *See, e.g.*, *Smith*, 2016 WL 762693, at *9 ("Just as the court may not accept explanations not offered in the ALJ's opinion, it cannot ignore or disregard statements made by the ALJ in support of the decision.") (citation and internal quotation marks omitted).

effectively 'playing doctor' and making a medical determination, something he is not qualified to do"). This Court is also unqualified to "play doctor," which is why the mental limitations assessed by Dr. Ahmed must now be recognized as controlling. Under these circumstances, the proper remedy is to reverse and remand for an award of benefits.

## V. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that Little's Motion for Summary Judgment (Dkt. 8) be GRANTED, Defendant Nancy A. Berryhill's Motion for Summary Judgment (Dkt. 10) be DENIED, the decision of the ALJ be REVERSED and the case be REMANDED to the Commissioner for an award of disability insurance benefits.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 25th day of June, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE